UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
TRUSTEES OF THE MOSAIC AND				:
TERRAZZO WELFARE, PENSION,			:		MEMORANDUM &
ANNUITY AND VACATION FUNDS, and		:		ORDER
TRUSTEES OF THE BRICKLAYERS &			:		15-CV-2253 (SMG)
TROWEL TRADES INTERNATIONAL			:
PENSION FUND,							:
												:
                Plaintiffs,		:
												:
   - against -								:
												:
												:
HIGH PERFORMANCE FLOORS, INC., a		:
New York Corporation, HIGH				:
PERFORMANCE FLOORS, INC., a New		:
Jersey Corporation, HPF, INC., 2 MAIN	:
STREET, L.L.C, and 40 PARK PLACE LLC,	:
												:
                Defendants.		:
------------------------------------------------------------X
GOLD, STEVEN M., U.S.M.J.:

## INTRODUCTION

Plaintiffs, Trustees of the Mosaic and Terrazzo Welfare, Pension, Annuity and Vacation Funds and Trustees of the Bricklayers & Trowel Trades International Pension Fund (the "Funds"), bring this action pursuant to Section 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended 29 U.S.C. § 1132(a)(3), and Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), as amended 29 U.S.C. § 185.

Plaintiffs seek to collect employer contributions, which they contend are owed for covered work performed by employees of defendant HPF, Inc. ("HPF"). Defendants High Performance Floors, Inc., a New Jersey corporation, and High Performance Floors, Inc., a New York corporation (collectively "High Performance"), are signatories to a collective bargaining agreement (the "CBA") that requires contributions to the plaintiff Funds.

After a three day non-jury trial on liability, the Court concluded that High Performance and HPF were alter egos and that they constituted a single employer. See Memorandum and Order dated February 9, 2017 ("Phase I Decision") at 27, Docket Entry 54. Therefore, the Court also concluded that defendants are jointly and severally liable for contributions due and owing under the CBA for covered work performed by HPF. *Id*. at 28.

On July 31, 2017, defendants moved for reconsideration of the Court's decision on liability. Def's. Brief in Support of Motion for Reconsideration of Phase I Decision ("Motion for Reconsideration"), Docket Entry 71-1. For the reasons stated below, the motion is denied.

## FACTUAL BACKGROUND

The underlying facts are set forth in detail in the Court's Phase I Decision and accordingly are reviewed only briefly here. Plaintiffs are trustees of funds established pursuant to the terms of collective bargaining agreements entered into between the Mosaic, Terrazzo and Chemical Product Decorative Finisher Masons Workers Association Local No. 7 of New York, New Jersey & Vicinity ("Local 7") and various employers. Compl. ¶ 13. Local 7 is a union whose members are tile, marble, and terrazzo workers. Tr. 34:14-16.[1]

Guy Balzano, the principal of High Performance, founded the company in December 1991. Tr. 361:5-9. High Performance is in the business of floor installation, and its primary contract is with Stonhard, Inc. ("Stonhard"), a resinous floor vendor that engages companies like High Performance to install its products. Tr. 361:10-362:13. High Performance is a signatory to the CBA that requires contributions to the funds for covered work.

The nominal principal of defendant HPF is Harold Sofield, who opened the company in May of 2012. Tr. 233:8-16. HPF is not a signatory to the CBA. The Phase I Decision holds, in

---

[1] "Tr." refers to the transcript of the bench trial held on October 5, 6, and 18, 2016. Docket Entries 51-53.

2

essence, that HPF was in fact formed by Balzano as a vehicle for performing covered work for owners or general contractors who did not require union labor, and to enable Balzano to avoid making the contributions that would otherwise be required by the CBA when performing such work.

Both Balzano and Sofield testified during the trial held in October 2016, as did several former employees of both High Performance and HPF. The Court concluded that the testimony presented demonstrated that High Performance and HPF shared management, employees, operations, and equipment; that they had a common business purpose; that control of labor relations at both companies was centralized; that the owners of the two companies had a close personal relationship; and that the employees of High Performance and HPF constituted a single bargaining unit. Phase I Decision at 27. Consequently, the Court concluded that defendants are jointly and severally liable for contributions due for covered work performed by HPF. *Id*. at 28.

Defendants raise three arguments in their pending motion for reconsideration. First, they contend that the ERISA provision invoked by plaintiffs authorizes only equitable remedies and not the monetary damages plaintiffs seek in this case. Motion for Reconsideration at 2. Second, defendants argue that the Court incorrectly concluded that HPF and High Performance constituted a single employer because it did not first determine whether the employees of the two companies properly comprised a single collective bargaining unit. *Id*. at 4-11. Finally, defendants argue that the Court's conclusion that the two companies were alter egos was incorrect because plaintiffs failed to present any evidence that High Performance transferred covered work to HPF. *Id.* at 11-22.

## DISCUSSION

### I. Timeliness

Local Civil Rule 6.3 provides that motions for reconsideration or reargument of an order resulting in entry of a judgment or one deciding a motion may be served within fourteen days after entry of the judgment or the order deciding the motion. L.R. 6.3. Relatedly, the Federal Rules of Civil Procedure permit a court to amend or supplement its findings, or to grant a new trial, on a party's motion filed within twenty-eight days of entry of judgment. Fed. R. Civ. P. 52(b), 59.

The Court entered its Phase I Decision on February 9, 2017. Defendants did not move for reconsideration, though, until July 31, 2017, more than five months later. Because defendants do not seek reconsideration of an order determining a motion or one resulting in the entry of a judgment, there is some ambiguity about whether defendant's motion is untimely. In any event, it appears defendants could bring a motion much like the one now pending pursuant to Rules 52(b) or 59 within twenty-eight days of entry of final judgment, which has not yet occurred. Accordingly, I consider defendants' arguments on their merits.

### II. Legal Standards

Reconsideration is an extraordinary remedy. *LoCurto v. United States*, 2017 WL 980296, at *1 (E.D.N.Y. Mar. 10, 2017). Nevertheless, a reconsideration motion may be granted where the movant can point to "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Bentivegna v. People's United Bank*, 2017 WL 4277149, at *2 (E.D.N.Y. Sept. 25, 2017) (quoting *Luv n' Care Ltd. v. Goldberg Cohen, LLP*, 2016 WL 6820745, at *1 (S.D.N.Y. Nov. 10, 2016)). In other words, a party moving for reconsideration must point out matters "that might reasonably be

expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

A motion for reconsideration may not, however, "be used as a vehicle to advance new theories or adduce new evidence in response to the court's rulings." *Chin v. U.S. Postal Service*, 2009 WL 3174144, at *1 (E.D.N.Y. Oct. 1, 2009) (internal quotations and citation omitted). Further, "[i]t is well-settled that . . . [a motion for reconsideration] is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), as amended (July 13, 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)). Consequently, "[t]he standard for granting a motion for reconsideration is strict in order to dissuade repetitive arguments on issues that have already been considered fully by the Court." *Medoy v. Warnaco Employees' Long Term Disability Ins. Plan*, 2006 WL 355137, at *1 (E.D.N.Y. Feb. 15, 2006). Therefore, when the movant seeks only to relitigate decided issues, the motion should be denied. *Shrader*, 70 F.3d at 257.

### III. Defendants' Arguments

#### A. Jurisdictional Basis for the Court's Decision on Plaintiff's ERISA Claims

Defendants first argue that the Court erred by allowing plaintiffs to proceed pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3). Plaintiffs do in fact invoke Section 502(a)(3) as one of the jurisdictional bases for their claims. Compl. ¶ 1. Defendants contend that Section 502(a)(3) only authorizes suits seeking equitable relief, and that plaintiffs in this action are seeking monetary damages.

5

Defendants did not present this argument prior to the Phase I trial. *See* Defs.' Pretrial Memorandum of Law, Docket Entry 42; Proposed Pretrial Order, Docket Entry 43. Accordingly, it is not properly advanced in the context of a motion for reconsideration.

Moreover, the argument lacks merit. On the one hand, defendants are correct that Section 502(a)(3) generally authorizes claims seeking only "appropriate equitable relief," and not monetary damages. Strictly construing the statute, the Supreme Court has held that where "petitioners are seeking legal relief—the imposition of personal liability on respondents for a contractual obligation to pay money—§ 502(a)(3) does not authorize th[e] action." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 221 (2002). *See also Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Gerber Life Ins. Co.*, 771 F.3d 150, 158 (2d Cir. 2014) ("The line of cases culminating in *Great-West* has been heavily criticized for unnecessarily reviving the historical division between law and equity, [but nevertheless] . . . legal claims [are] barred by this line of cases." ).

The decisions in *Great-West* and *Central States* are based upon a literal reading of the text of Section 502 of ERISA. Significantly, though, neither involved an action, like this one, brought by plan fiduciaries to enforce 29 U.S.C. § 1145. *See* Compl. ¶¶ 16, 58, 65 (explicitly invoking Section 1145). The sole case relied upon by defendants likewise does not involve a claim pursuant to Section 1145. *See DeSilva v. N. Shore-Long Island Jewish Health Sys.*, 770 F. Supp. 2d 497, 536-38 (E.D.N.Y. 2011).

Section 1145 requires employers to comply with their obligations to make fund contributions, like those plaintiffs seek to recover here, when required to do so either by an ERISA plan or a collective bargaining agreement. Section 512(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), provides that, "[i]n any action under this subchapter by a fiduciary for or on behalf

6

of a plan to enforce section 1145 . . . , the court shall award the plan" the unpaid contributions and other relief sought by plaintiffs in this action. Thus, the text of the statute explicitly authorizes plaintiffs to assert the causes of action and seek the relief claimed in their complaint. *See Brown v. Sandimo Materials*, 250 F.3d 120, 127-29 (2d Cir. 2001) (permitting trustees to pursue claims for unpaid contributions under Section 502 of ERISA and the LMRA). Accordingly, *Great-West*, *Central States*, and *DeSilva* are not controlling here.

Although Sections 1145 and 1132(g)(2) provide a basis on which to grant plaintiffs' relief, there does appear to be some tension between § 1132(a)(3)'s limitation to equitable relief and the remedies explicitly described in § 1132(g)(2). Nevertheless, the Second Circuit has noted that "[t]he aim of ERISA is to make the plaintiffs whole." *Henry v. Champlain Enterprises, Inc.*, 445 F.3d 610, 624 (2d Cir. 2006) (internal quotation marks and citations omitted). Accordingly, any ambiguity should be resolved in favor of a construction of the statute that requires defendants to satisfy their obligations to plaintiffs.

Even if Section 502 were not a proper jurisdictional basis for plaintiffs' claims for monetary relief, those claims would survive because they are brought in the alternative pursuant to the LMRA. Compl. ¶ 1. Defendants do not challenge plaintiffs' right to seek the relief they claim pursuant to the LMRA. Motion for Reconsideration at 3 (acknowledging that "29 U.S.C. § 185 provides a proper basis for the relief Plaintiffs seek"). Moreover, the findings made by the Court after completion of the Phase I trial support an award pursuant to the LMRA. The Court found that High Performance and HPF were alter egos and constituted a single employer, and that the employees of HPF and High Performance properly comprised a single bargaining unit. Phase I Decision, at 27. This is sufficient under the LMRA to "bind [both] . . . companies to the collective bargaining agreements of any one of the companies." *Lihli Fashions Corp. v.*

7

*N.L.R.B.*, 80 F.3d 743, 747 (2d Cir. 1996), as amended (May 9, 1996) (citing *Truck Drivers Local Union No. 807, I.B.T. v. Regional Import & Export Trucking Co., Inc.*, 944 F.2d 1037, 1046 (2d Cir. 1991)). The fact that the relevant evidence and analysis under ERISA and the LMRA overlaps does not diminish the Court's authority to provide relief under the LMRA. *See Sandimo Materials*, 250 F.3d at 127 (holding that a parallel claim in equity will not impair a plaintiff's right to a jury trial on its legal claims).

For all these reasons, this prong of defendants' motion is denied.

**B. Commonality of Interest Among HPF and High Performance Employees**

Defendants next argue that the Court erred in concluding that HPF and High Performance constituted a single employer without first considering whether the employees of both companies constitute an appropriate single bargaining unit. Motion for Reconsideration at 4-11. Defendants argue that "a critical factor is whether the employees sought to be included in the unit share a community of interest." *Id.* at 5. Defendants contend that plaintiffs failed to produce evidence of a community of interest shared by HPF and High Performance employees, and that the Court therefore had no basis on which to find that the employees of the two companies could appropriately be joined in a single bargaining unit. *Id.*

Defendants' contention that the Court did not consider whether the employees of High Performance and HPF properly constituted a single bargaining unit is incorrect. To the contrary, the Court identified the relevant factors and applied them to the facts established by the evidence at trial. Phase I Decision at 6, 27. As noted in the Phase I Decision, courts "look for a community of interests among the relevant employees, and factors such as bargaining history, operational integration, geographic proximity, common supervision, similarity in job function and degree of employee interchange." Phase I Decision at 6 (quoting *Sandimo Materials*, 250

8

F.3d at 128 n.2) (internal quotation marks and citations omitted). The evidence at trial supported a finding that the employees of HPF and High Performance overlapped, and that the nature of their work was similar, if not identical. Moreover, employees of the two companies used the same equipment, reported to the same supervisor, and worked in the same geographic area. Phase I Decision at 14-18, 22-27. Although defendants argue that there may have been other HPF employees whose work was not described at trial and who may not have shared a community of interest with those whose work was described, their argument amounts to mere speculation and is unsupported by any evidence introduced by either side at the Phase I trial.

Even if, as defendants contend, the evidence had shown that only a few individuals were employed by both HPF and High Performance, or that those employees were engaged in dissimilar jobs, the evidence would still support a finding that the employees could be joined in a single bargaining unit. Courts determining whether employees comprise an appropriate bargaining unit consistently consider a range of factors. *See, e.g.*, *Fuchs v. Cristal Concrete Corp.*, 2006 WL 2548169, at *9 (E.D.N.Y. July 18, 2006) ("Eight factors are relevant in making this [appropriate bargaining unit] determination . . . ."); *LaBarbera v. C. Volente Corp.*, 164 F. Supp. 2d 321, 326 (E.D.N.Y. 2001) (describing the same eight factors referenced in *Fuchs*). Although defendants seem to argue that the evidence with respect to one or more of these factors was insufficient, it is clear that plaintiffs need not establish that every factor is present in every case. Thus, for example, appropriate single bargaining units have been found, even in the absence of a substantial number of overlapping employees, based upon the presence of other relevant factors. *See, e.g.*, *Fuchs*, 2006 WL 2548169, at *9 (although only "at least two" employees overlapped, companies had offices next door to one another, required the same skill set in employees, appeared to have centralized administration and control, and exchanged

9

employees to the point they were unaware which company they were working for); *King v. Unique Rigging Corp.*, 2005 WL 2290585, at *3 (E.D.N.Y. Sept. 20, 2005) (although only two employees overlapped, they were based in the same location, drove the same vehicles regardless of which company they worked for, and were supervised by the same person); *Brown v. Dominic Prisco Transport, Inc.*, 1997 WL 1093463, at *4 (E.D.N.Y. Aug. 16, 1997) (a single bargaining unit was properly found to exist where employees from two separate companies shared the same job classification and performed the same type of work, even though one company performed commercial contracts and the other performed residential ones).

For all these reasons, I see no reason to alter the Court's Phase I Decision with respect whether the employees of High Performance and HPF comprise an appropriate single bargaining unit.

### C. Finding of Alter Egos Absent Evidence that Covered Work Was Transferred

Defendants' third argument is that the Court incorrectly decided that HPF is an alter ego of High Performance Floors. Defendants' argument appears to be that a finding that companies are alter egos requires evidence demonstrating that covered work was transferred from a company that signed the relevant CBA to one that did not.

Defendants' argument fails for two reasons. First, the Court acknowledged that anti-union animus is relevant to determining alter ego status, and found that the evidence supported a finding that "Balzano would have had little reason to arrange for his friend Sofield to form HPF unless he sought a vehicle through which he could perform Stonhard jobs that did not require union labor without satisfying the requirements of the CBA." Phase I Decision at 25-26.

Second, a finding that work was in fact transferred is not required. When a Court decides whether a plaintiff has established alter ego status, it considers "commonality of (i) management,

10

(ii) business purpose, (iii) operations, (iv) equipment, (v) customers, and (vi) supervision and ownership" between the subject entities. *N.Y. State Teamsters Conference Pens. & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 649 (2d Cir. 2005) (quoting *Newspaper Guild of N.Y. v. N.L.R.B.*, 261 F.3d 291, 294 (2d Cir. 2001)). Although each of these considerations frame the Court's analysis, no single factor is dispositive, and they need not all be present in each case. *Plumbers, Pipefitters and Apprentices Local v. Mauro's Plumbing, Heating and Fire Suppression, Inc.*, 84 F. Supp. 2d 344, 351 (N.D.N.Y. 2000) (citing *Lihli Fashions Corp.*, 80 F.3d at 747). Rather, the alter ego inquiry depends on "the totality of the facts." *Trustees of the New City Dist. Council of Carpenters Pension Fund v. Integrated Structures Corp.*, 595 F. App'x 15, 17 (2d Cir. 2014) (citing *United States v. Funds Held in the Name or for the Benefit of Wetterer*, 201 F.3d 96, 106 (2d. Cir. 2000)). Indeed, "[c]ourts have without difficulty disregarded form for substance where ERISA's effectiveness would otherwise be undermined." *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1220 (2d Cir. 1987). Accordingly, "[t]he test of alter ego status is flexible, allowing courts to weigh the circumstances of the individual case." *Gesualdi v. Juda Constr., Ltd.*, 2011 WL 5075438, at *8, (S.D.N.Y. Oct. 25, 2011) (quoting *Ret. Plan of UNITE HERE Nat. Ret. Fund v. Kombassan Holding A.S.*, 629 F.3d 282, 288 (2d Cir. 2010)).

The Phase I Decision, in addition to finding that the motive for forming HPF was likely to avoid obligations imposed by the relevant CBA on High Performance, considered evidence of HPF's and High Performance Floors' formation, business purpose, management, supervision, ownership, address, equipment, employees, and customers. Having considered that evidence, I concluded that High Performance and HPF were alter egos. Phase I Decision at 27. Because that conclusion was reached after examining the relevant factors and in light of the totality of

11

circumstances, defendants have failed to identify any basis for revising the Phase I Decision's alter ego finding.

## CONCLUSION

For all of the reasons stated above, defendants' motion for reconsideration is denied.

SO ORDERED.

/s/
STEVEN M. GOLD
United States Magistrate Judge

Brooklyn, New York
January 8, 2018

*U:\#DJM 2017-2018\Trustees of the Mosaic and Terrazzo Wellfare Pension, Annuity, and Vacation Funds, et al. v. High Performance Floors, Inc. et al. 15-CV-2253 (SMG)\[71] Reconsideration Motion\Order on [71] Motion for Reconsideration FINAL.docx*